Good morning, Illinois Appellate Court, First District Court is now in session. The fourth division, the Honorable Justice Mary Kay Walsh for presiding case number 21-0478, Charles Muhammad versus Abbott Laboratories. All right, I'll start again. And I apologize for my tech technology technology issues. And I apologize for starting a little bit late. And I did also want to let the parties in know that presiding justice Reyes extends his apologies for not being here. This morning, he had an unexpected situation and conflict occurred that required his attention. He will, I assure you be listening to the audio of the oral arguments. So at this time, I would like counsel if they would to please introduce themselves and starting with the appellate. Good morning, Your Honors. My name is Milo Lundblad. And I represent the Muhammad plaintiff appellants. Thank you, counsel. And for the appellee. Good morning, Your Honor. Stephanie Wittenauer for the appellees Abbott Laboratories and AbbVie, Inc. Thank you. So each side will have 20 minutes to present their arguments. And Mr. Lundblad, would you like to reserve some of their time for your rebuttal? And if so, how much time would you like? I would like to reserve five minutes, please. Sure. And so if you would like Mr. Lundblad, please, please go ahead. All right. Thank you. Good morning. May it please the court and counsel. There are two major issues before the court this morning. One is whether or not the trial judge appropriately granted summary judgment on the basis of judicial estoppel. And then the second one is whether or not this court if it finds judicial estoppel does not apply whether or not the decision below should be affirmed based on the inability of plaintiff to prove proximate cause. I'll deal with the judicial estoppel issue first. And again, the issue is actually pretty compact that under the Seymour versus Collins analysis, the five point analysis, that the two questions before the court are prongs one and two, and that is, did the Mohammed plaintiffs take a position in the Northwestern litigation, the case against Northwestern Memorial Hospital and the two doctors that is factually inconsistent with positions taken in this litigation? And I'd submit that the short answer to that question is no. The defendants have raised two claims of inconsistency between the two cases by the Mohammed's first of all, defendants argue that plaintiffs in the in the Northwestern litigation claimed that the Northwestern doctors were the sole proximate cause of the plaintiff quattro the child who was injured his condition. And that's simply not true. As the court I'm sure as law is very clear that a plaintiff in a personal injury case never has the burden of proving that a defendant was the sole proximate cause of the plaintiff's injury under the proximate cause instruction and the law plaintiff only needs to prove that defendants conduct was a proximate cause, one proximate cause that can combine with others. And in the Northwestern litigation, there were multiple other factors that could have contributed to the end result of quattro being exposed to Depakote in utero and being injured. There were other doctors that had weighed in on whether or not Depakote should have been given including a outside consultant, Dr. Dago. And also, there was the elephant or the gorilla in the room of his mother's conduct, Angie's conduct and that she was the one who was not using birth control properly. So we believe that plaintiff took a consistent position of only arguing that the defendant doctors at Northwestern were a proximate cause, not a sole proximate cause. So there's no inconsistency there. The second claim by defendants is that they contend that in the Northwestern litigation, plaintiffs claim that the defendants had enough knowledge to withdraw Depakote and prevent entry. But here, we're claiming that they did not have enough knowledge. What I'd like to point out is that in the Northwestern litigation, plaintiffs expert Dr. Wills did not offer the opinion that Depakote never should have been prescribed. And her reason for that is because at the time, the the literature and the warnings put out by Abbott only said that there was a one to 2% risk of spina bifida with if a woman became pregnant while taking Depakote. And Dr. Wills was of the opinion that based on that low risk, that it was reasonable to start Mrs. Muhammad on Depakote. But the situation changed when it became apparent that she was likely to get pregnant because she could not use birth control properly. Now, in this case, the evidence is different in that the evidence shows that Abbott knew that the real risk of Depakote was 10 to 17%. And that information was not disclosed in their labeling. And, you know, it is black letter law that in a medical malpractice case that a doctor has to be judged on the knowledge that was available at the time of the treatment. So because the knowledge about the 10 to 17% risk of injury was not known, not in the warnings, then the two doctors had to be judged by the limited information they had that there was only a one to 2% risk, which made their choice initially reasonable. If here, what all the plaintiff is saying is that if the real risk of Depakote had been published and made known by Abbott, then that would have given even more reason for the doctors to have stopped Depakote when it became apparent that Mrs. Muhammad was likely to become pregnant. Or the other thing is that they never would have started the Depakote based on the fact that the risk at 10 to 17% outweighed the benefit and therefore, they should have considered less toxic medication such as lithium. So it's our position that we have not taken two factually inconsistent positions that even based on the knowledge that was available, the doctors could have made the right decision. And had they had the full picture of all the knowledge, then they would have had an even better opportunity to act appropriately. And I'd like to point out as we did if I could stop you there and just kind of clarify. I don't know that I got that second part is clearly from your briefs. I thought the allegations here are that if they had full knowledge, they would never have prescribed it in the first place. But But now you're saying there's a second part that it would have given more support for an allegation that they should have stopped it. So is there a reference to No, that that's exactly correct. I mean, we we believe that if the doctors if in 2005 2005, that the full risk was known of 10 to 17%, then the doctor should have made a different choice and never prescribed it. However, it I believe that it follows and was argued in the brief that if the risk published risk was known to be higher, that it would have given even more reason for the two doctors to stop Depakote in June right after it started when they had the pregnancy scare. And that there would have been even more reason for them to have switched that is, you know, as the doctors acknowledged in their depositions that this whole thing, their decisions are based on a weighing of risks versus benefits. And because of the limited knowledge they had due to the improper warning, the risk was that of one to 2%, as opposed to 10 to 17%. And if the real risk had been known, and then put into the equation, that the risk side of the scale would have tipped against giving Depakote or stopping Depakote after the pregnancy scare. So for that reason, we believe that the two theories are compatible, that they're consistent, that with more information, it would have even created a higher likelihood that the defendant doctors would have made the right decision instead of the wrong one that they did. Um, now, if they had not get prescribed Depakote at all, doesn't does that still, if that's the arguments in this case, would there then be no liability to the doctors for the claim in the Northwestern case that they should have stopped? Well, never been prescribed in the first place? Well, I don't think that that's an inconsistent that, that even if we had the same set of facts where they started, Mrs. Mohammed on Depakote, that when they had the pregnancy scare, as I mentioned before, there would have been even more reason to stop because when they had to do their reevaluation of the risk benefit, that the risk of 10 to 17% injury would have tipped the scales at that time as well to stop Depakote and choose an alternative. So that they were so that their doctors would not be insulated. I mean, they still had, they were the ones that prescribed Depakote. So they they're the ones that would still have had to either choose a different alternative, or stop the Depakote. So it wouldn't, the fact that if there had been better warnings, it would not have relieved them of their liability. Mr. Milo, I'm sorry, if I may, just to follow up on that point, just to be certain that I'm, I'm understanding you correctly. Is it not the case that in the Northwestern litigation, the Mohammed's alleged in their complaint, and I imagine it's sought to prove that the warnings that the doctors received in that litigation was sufficient to put them on notice that they should not have prescribed Depakote to a woman in Miss Mohammed's situation. If that is the case, that that was the allegation, then is there not some conflict in saying that they were sufficiently warned, but prescribed Depakote anyway. But now we're arguing that the warnings were insufficient. Well, the I need to clarify one thing. And that is that plaintiffs expert Dr. Wills would not offer the opinion that Depakote never should have been given. Because at that time, there was only a known risk of one to 2%. And that if you were doing the risk analysis, using one to 2%, then it would be reasonable to have started Mrs. Mohammed on Depakote. However, as events unfolded, and it became apparent that she could not be trusted to be to not get pregnant, then even that one to 2% risk was enough to tip the balance against Depakote and to for the doctors to talk to stop prescribing it. The point I was trying to make is that if Abbott had properly labeled Depakote to say that there was a 10 to 17% chance that a child or a fetus exposed to Depakote would develop cognitive deficits such as the one that Quatro has, that it would have been even greater incentive or it would have even further tipped the balance when the doc when the pregnancy scared occurred for the doctors at Northwestern to have stopped the Depakote. And and also it's our position that if the Depakote warnings had been proper, then the standard of care that would have been applicable in 2005 would have said you can't prescribe Depakote to a woman who is of childbearing age and who can get pregnant, you need to use something different. So it would have amplified the reasons for the doctors to have chosen a different course. So I don't believe that that's inconsistent. I mean, I think the the analysis is similar to two cases, we cited the Tongate versus Searle and the Hansen versus Baxter Baxter cases. In each of those cases, the plaintiffs were proceeding on the on the premise, for example, in Tongate, that the doctor had some knowledge. And based on the knowledge he had, he could have made a proper decision. But if Searle had properly given warnings about the vaccine that was given that caused injury, then it would have further provided a further basis for the doctor to have made the right decision and not given the vaccine. And, and it's similar with Hansen, the doctors are admitted, they had some knowledge about the problem with friction connections in central lines. And that they could and should have done something different. But if Baxter had had provided proper warnings, then it would have further increased the likelihood that the doctors would have done the right thing, and and would have not been negligent. So it's the same thing here that if the proper warnings have been put out, it would have amplified the danger and amplified the reasons for the doctors to have chosen a different vaccine. I'd like to also just point out that the Smelis case that was relied upon by defendants is really apples and oranges and does not apply here. In Smelis, the plaintiffs when they changed experts, actually changed the date of injury, they moved it from August 10, to August 14, for the remaining doctor potentially liable, when under the old theory, he could not have been liable because he did not see the patient before August 10. So that was a huge change. In fact, fact change that was totally inconsistent, which is not the case here. There is plaintiff has always been consistent that the injury occurred right after Mrs. Mohammed became pregnant and was due to the exposure to Depakote in the period of time for about six weeks until it was stopped. The I don't know if you want to go to proximity. Yes. Thank you. Okay. Unproximate cause. The there are a couple of things. One is that under Illinois law, starting in the Seif versus Ingalls case, when Justice Prasad's dissent saying that if a doctor says even if I knew I wouldn't have done anything, a treating doctor, that a plaintiff can create a question of fact to defeat summary judgment and go to a jury by having an expert opine that if the doctor had followed the standard of care, that he in fact would have done something different. And that's what we have here. We have the testimony of the two treating doctors from Northwestern, who 15 years after the fact, and after testifying initially that they couldn't even remember their thought processes at the time they prescribed Depakote, suddenly are saying that we would not have changed our course of action no matter what. As Justice Prasad pointed out that such testimony, looking back after the fact, is really nothing more than rank speculation. And that a more persuasive approach is to look at what a doctor should have done with if the information had been provided. And that's what we've done here is that we have tendered the deposition or the affidavit of Dr. Nasser, who testifies in by way of affidavit that if the true risk of knowing that information would not have prescribed it because it would have been against the standard of care to give a woman of childbearing age, who is sexually active and at risk of becoming pregnant Depakote, especially when safer alternatives were available, such as lithium. And the defendants have contended that, you know, that theory has been developed in medical malpractice cases and should not apply here product liability cases. However, I would point out that that line of thinking and evidence is consistent with product liability law, that there is a theory in product liability law in warning cases, that it's called the heating presumption theory was adopted by the court in Mar versus GD Searle. And that is, is presumed that a competent doctor will heed and follow proper warnings. And so all that we're doing here is that we are providing the factual basis of what a competent doctor should have done, if in fact they had the the information that was that was the correct information about the risk being between 10 and 17%. And so we believe that that testimony overcomes and creates or creates a question of fact, at a minimum, regarding approximate cause in this case, and that is if the warnings had been properly given with the proper risk of 10 to 17%, that it would have should have caused the two treating doctors not to prescribe it in the first place. And obviously, if never prescribed, the injury would not have occurred because Mrs. Muhammad would not have been taking Depakote at the time she became pregnant. So we believe that proximate cause is a question of fact, and is not a proper basis for affirming the court below. So we believe your honors and ask that the trial court decision granting summary judgment be reversed, and that this matter be sent back for review. Thank you. Justice Martin, do you have any questions? No, no, just no further quip. Not at this time. Thank you, counsel. Miss Whitner. Thank you, Justice Lewis. And good morning, may it please the court. Stephanie Wittenour for the Eppley's Abbott Laboratories and AbbVie, Inc. In Smiles versus Lipkus, this court made clear that a plaintiff cannot place principal blame for his injuries on one medical professional and one lawsuit, obtain a benefit from that lawsuit, and then turn around and file another lawsuit that tries to tell a different story to place principal blame on someone else. That's exactly what the appellants did here. In the Northwestern case, the plaintiff's claim that the doctors had the information that they needed to make a safe prescribing decision, but that their failure to use that information resulted in the injuries. In this case, the plaintiffs have done a 180 degree turn. They now claim that the doctors did not have the information that they needed to make a safe prescribing decision, because Abbott didn't give them the information and that it was Abbott's fault the plaintiff now has injuries. This is precisely the situation that judicial estoppel was designed to prevent. And there can be no doubt that application of the doctrine here would not be an inequitable remedy. This is not a case of an inadvertent non-disclosure of a bankruptcy asset, which was the case in Seymour. This is not a case where a plaintiff would be left with no recovery if judicial estoppel was applied, which was also the case in Seymour. This is a case where a plaintiff made a strategic choice as to what story to tell to a jury. The jury believed the plaintiff's story, and the plaintiffs walked away with a $12 million voluntary settlement that was based on a jury verdict in their favor. Separately, no pharmaceutical failure to warn case that's reported in Illinois has found a submissible case on causation with the type of doctor testimony we have here, where the doctor said unequivocally that a different or additional warning from Abbott would not have changed their prescribing decision. Either basis, judicial estoppel or proximate cause independently justifies summary judgment. I want to start with as Mr. Lundblad said, there are really only two of the five factors of judicial estoppel that are at issue, which is, did the plaintiffs take an inconsistent position in the Northwestern case? And in this case, that's what this boils down to. That's the question for this court, are the positions inconsistent? I think it's important to look at what the plaintiffs actually alleged and what they actually said in the Northwestern case, in their amended complaint, which is in the record at C-266. The plaintiff specifically said at all relevant times here too, Depakote was well known within the medical and mental health care communities as a drug that could cause serious debilitating birth defects and was well known to be contraindicated in women who could become pregnant. They also alleged in the Northwestern complaint that the doctors continue to prescribe Depakote despite knowledge of the well documented and widely accepted dangers associated with the use of Depakote. In fact, plaintiffs in the Northwestern case went so far as to file a motion in Lemonade to exclude any reference of their dismissed warnings claims against Abbott so that the jury could not hear about those claims. And I just want to clarify on the record one thing, our briefing had indicated that the claims against Abbott and Northwestern were at one point in time part of the same lawsuit, but Appellants correctly noted that they were part of two different lawsuits that were pending at the same time. In any event, for the legal principle, it makes no difference. They dismissed their claim against Abbott and sought to make sure that the jury didn't hear about that claim. And specifically, Mr. Lundblad represented to the circuit judge in Cook County, he said, if we win this trial, then there will be no need to take further action by way of a warnings claim against Abbott. And he said, the reason for that is because the doctors that are involved in this case, the Northwestern case, they've all testified, if we just had more information, we wouldn't have prescribed the Depakote. They never said that. He said, nobody here said that if we only knew more, we would have acted differently. So essentially, he was telling the circuit court exactly the opposite of what he's told the circuit court in this case. He was telling the circuit court, the doctors never said that they would have done anything differently. So Abbott's warning makes no difference. And they benefited, can we take arguments on a motion in Lemony, in which plaintiffs counsel was attempting to argue the relevancy of the North dismissed Northwestern sued as being a position, which could be judged inconsistent under judicial estoppel? I think so. I don't think there has to be a there. Certainly, it does not have to be under oath. The smallest case made clear that the representations when you're comparing them don't have to be representations under oath. But the bottom line is that he was making those representations consistently, he was saying this, this is our theory in the case. And that's what he represented to the court. But even even setting that aside, I don't think you necessarily need that because we also have the amended complaint, which you clearly can look at in the Northwestern case where plaintiffs are asserting that exact same position that the doctors had knowledge of the risks and that they shouldn't have prescribed it based on that knowledge. Before you move on, before you move on from the judicial estoppel issue, I would also ask you perhaps to comment on the fact that judicial estoppel, it requires that a party offer evidence that they intend the prior effect to take as evidence. This we're talking about is a is a hearing with the court, the judge, him or herself, about what evidence to allow, not the plaintiff trying to produce evidence to the trier effect, which it seems to me judicial estoppel there, there's that requirement for judicial estoppel to be effective. The requirement in judicial estoppel is that the plaintiff took two different paths had pursued two different litigation theories. There is no requirement that the plaintiff had to actually tell the jury. Oh, right. There has to be facts that they intend for the jury to accept or the trier effect to accept. And this wasn't this discussion that you that you're talking about was in the confines of a motion and limited. That's the the only point. I understand. I, my response to that would be that that was a representation made to the court that in any event, the amended complaint is what courts regularly look at when they're comparing whether there's inconsistent theories. And my final response to that would be the question. In the Northwestern case, you have to ask is why? Why should the doctors not have prescribed Depakote? The only reason how the jury could possibly find that the doctor should not have prescribed Depakote is if they knew of the risks associated with it and prescribed it anyway, that's inconsistent with the theory in this case, that the doctors did not know about the risks. They didn't have as much information. And that I believe counsel said it was the risk benefit analysis would have changed. Yeah, I actually I wrote down exactly what Mr. Lundblad said before this court just a few minutes ago, he said that their claim here is with more information, the doctors would have made the right decision. So with more information, the doctors may have would have made the right decision. That is completely inconsistent with the claim that was made in the Northwestern case. I think that we have to ask ourselves if the jury in the Northwestern case, had heard that had heard that with more information, the doctors would have made the right decision, would they have found the doctors liable and I they could not have it would have been completely inconsistent. So we don't dispute that there can in some cases be more than one proximate cause of the injury. But that's not what was alleged here. Either the doctors had sufficient information, the information that they needed to make the right prescribing decision, or they didn't. And in Northwestern, the theory was that the plaintiffs had sufficient information. Mr. Lundquist didn't discuss this in his oral argument, but I do want to briefly discuss the equities because it was made a big part of plaintiffs brief. And again, the cases that have found that the factors of judicial estoppel were met, but then have refused to apply it are cases where there was a mistake or an inadvertent failure to disclose something in the first case, and where the plaintiff personal injury victim would be left with no recovery for his injuries. Here, there was a tactical decision made on the part of plaintiffs that they were going to pursue the doctors and that they were going to place the blame on the doctors. It was a tactical decision that paid off for the plaintiffs, the jury accepted their arguments, and awarded $18 million and they walked away with a substantial $12 million recovery. So and and now in this case are seeking even more damages and more money for the same injuries based on an alternative and not alternative, but a completely conflicting theory that is different than the one that they pursued in front of Northwestern. So the plaintiffs have been compensated substantially for their injuries. And so this is just not a case where it would be inequitable to apply judicial estoppel. I think the plaintiff has indicated that, you know, should this proceed and go to a judgment verdict, whatever for plaintiff that Abbott would receive some type of credit or offset for the $12 million. Is that true? And how would that work? Yeah, so that that is true that if there was a verdict in excess of $12 million, that Abbott would after the verdict receive a set off in that amount. However, Abbott would not be able to tell the jury about that. And the plaintiff's decision to accept that settlement in the Northwestern case for 12 million was in acceptance of full recovery for their injuries. The jury verdict was meant to fully compensate them for their injuries. So it would still be a situation where they were allowed to tell the jury one thing in the we can't go back to the Northwestern trial and tell those jurors, hey, by the way, they're now claiming that Abbott causes they've already received their full recovery from that. So the set off would not, it would still give plaintiffs a second bite at the apple to try to get even more money and roll their dice again and see if they can, you know, get get even more money when they've already been fully compensated. I'd like to move on to proximate causation. Judicial estoppel can and should be the end of the inquiry by this court, it was the end of the inquiry by the circuit court, and the circuit court summary judgment order can and should be affirmed on that basis. But even if it's not, and even if we go on and look at proximate cause, it presents a separate and independent basis this court can affirm on. In a warrant case against a manufacturer, the plaintiffs have the burden of proving that a different warning would have made a difference. So in a pharmaceutical case, a prescription drug case where a doctor has to prescribe the drug, the question is whether the prescribing physician would have made a different decision, if there had been a different warning. This is not just a case where the plaintiffs don't have sufficient proof on that element, or where they don't have any proof. It's a case where the doctor's testimony actually negates proximate causation. Both doctors testified repeatedly and unequivocally, that additional or different warnings would not have made a difference to their prescribing decision. Because to them, the key was their knowledge that Miss Muhammad was on birth control, she had a severe condition that required Depakote, and they knew that she was on birth control. So they said that no matter what the rate of the risk was, that wouldn't have changed their decision to prescribe Depakote to her, since they knew she was on birth control. And since she needed the medicine, so, so much. Dr. Allen specifically said, regardless of what the percentage of risk was, I would have still prescribed it. That testimony is key and negates proximate causation. I do want to briefly touch on the heating presumption because plaintiffs brought that up in this case. The heating presumption, first and foremost, has not been adopted by the Illinois Supreme Court or any Illinois court. The case that plaintiffs cite the 1979 case of Marr versus G.D. Searle, that was actually a case brought under Texas law. And the Illinois Court of Appeals cited a Colorado case for the adoption of the heating presumption. It's not a presumption that applies in Illinois. But even if Illinois had adopted the heating presumption, it doesn't apply where you have actual testimony from the doctor. The heating presumption is about what the doctors would have done if there had been a different warning in the absence of evidence otherwise. Here we have the evidence from the actual doctors about their testimony about what they would have done. So that the presumption not only hasn't been applied in Illinois, but it wouldn't apply to this case anyway. Finally, I'd like to briefly discuss this affidavit that plaintiffs tendered in response to Abbott summary judgment motion. This is an affidavit from a purported expert witness who opines that a psychiatrist adhering to the standard of care would not have prescribed epicote in the face of additional warnings. So the affidavit from the doctor says, essentially, that the doctors here their testimony violates the standard of care, their testimony that they would have prescribed it violates the standard of care. And Mr. Lundblad is right. Our argument against that is that these are all medical malpractice cases, plaintiffs have failed the site. And there is not a single product liability case where the plaintiffs can overcome warnings causation by tendering an expert affidavit on standard of care. And that makes sense. Because the question in a product liability warnings case is not what the doctors should have done. That's not a question to be asked. The question is what the doctors would have done what these doctors not what a good doctor would have done not what a doctor adhering to the standard of care would have done. That's that's a medical malpractice question. The question in a product liability case is what these actual doctors Miss Muhammad's actual doctors would have done. And we know from the testimony of what they would have done. And that's why plaintiffs haven't found a single case outside of the medical malpractice context, which is obviously much different because the doctors are on trial and standard of care is the question presented to the jury and the court in that case. But isn't it more evidentiary question? I mean, you obviously are using their testimony from a medical malpractice case in your defense in this product liability case. And they're challenging it or trying to create a question of fact with their affidavit. To be clear, the testimony that we have cited and all the testimony from the doctors about what they would have done in the face of additional warnings is from this case, the doctors were deposed in this case, they weren't asked those specific questions, because, because it wasn't a warnings case, they weren't asked those specific questions about if there had been a 10% or 20%. You're correct. Yes, I'm sorry. No, I appreciate the clarification. And, and Council, let me interrupt you just on this affidavit issue. So then is it your position that Dr. Nazar's affidavit does not raise a material issue of fact, when he in effect in his affidavit does say that he would that the doctor should have done something differently? Yes, it's our position that it doesn't create a material question of fact for this product liability case, I do think it could have created a question of fact as to whether the doctors violated the standard of care. That's not the question here is what the actual doctors would have done in a standard of care med mal case. Yes, it would it would potentially create a question of fact. And that's why that's why there are cases in the medical malpractice context that says exactly that that say exactly that, that a that a expert affidavit on standard of care can raise a question of fact in a standard of care case, but there's no question in this case that's being presented as to whether the doctors violated the standard of care in a product liability case. But there is a question about whether or not they had sufficient information to make a decision. That is the question that would be asked is yes, did they have sufficient information to make a decision and they answered that question with their testimony. The evidence is that the doctor said yes, we had sufficient information to make a decision which is the same theory that the plaintiffs advanced in the Northwestern case. Essentially, just to conclude the appellants in the Northwestern case proceeded on a theory that the doctors had the information that they needed to make a safe prescribing decision. The jury accepted that premise as true and appellants benefited substantially to the tune of $12 million. Now in this case, the plaintiffs have alleged and claimed that the to make an appropriate and safe prescribing decision, and that if only Abbott had given them more information, the outcome wouldn't have been different. Not at all what they alleged in the Northwestern case, the circuit court carefully evaluated the facts and the testimony and correctly held the judicial assemble applied and this court should affirm on that basis. But if the court reaches the proximate cause issue, the testimony of the doctors in this case is unequivocal, and cannot possibly support a finding that a different warning would have resulted in a different prescribing decision. So under either scenario, the circuit court's ruling was correct and appellants respectfully request this court. Thank you. Any further questions? Justice Martin? Thank you. All right. Thank you so much, counsel. And Mr. Lumbliam, would you like to offer a rebuttal with the timeframe of the five minutes? All right. With regard to the proximate cause issue going backwards here, the doctors, their testimony, and in particular, that of Dr. Allen's was preposterous. He said that even if he had been told that there would be 100% chance of serious cognitive handicaps and deficits caused by Depakote, if Mrs. Muhammad became pregnant, he would still give the drug. That testimony is unbelievable. And the reason that what makes Dr. Nassar's testimony relevant is that the Marr court specifically talked about the heeding presumption, which has been that a competent doctor will heed and follow proper warnings. So this raises a question of what a competent doctor would have done if Abbott had fully disclosed the extent and seriousness and the much higher rate of risk that it's drug had for causing severe cognitive deficits if a woman became pregnant while taking it. So I believe that even though the cases such as Seif and Snelson arise in the medical malpractice case, that based on the fact that the warnings and the fact that competent doctors are presumed to follow them makes his testimony relevant. And this is not a small change. I mean, we went from a one to 2.2% risk of a serious deficit to a 10 to 17%. And I believe that that creates a question of fact as to whether or not it would have been reasonable for the doctors to have done what they did, had they known that the question that Justice Martin raised regarding the hearing on an evidentiary motion, as Seymour points out, the movement has to provide clear and convincing evidence. As noted by the court here, there was argument on a motion in limine and counsel never provided the final ruling on it. The judge indicated in her comments that she was making an It had to do with the breadth of cross examination of plaintiffs proximate cause causation witness Dr. Siegel. So they've never tendered to this court the actual cross examination and what the judge did and it really is a irrelevant issue. And besides that, in the depositions of Dr. Allen and Dr. Stepanski in the Northwestern case, neither attorney asked a what the doctors might have done if they had additional information. So that's why it would have been irrelevant to the Northwestern case to have even gone into it because there was no basis for it. And the going back again to to the because spina bifida bifida is so catastrophic. That even a one to 2% risk should have been enough for Dr. Stepanski and Dr. Allen's to stop the Depakote once it became evident that Mrs. Muhammad was not going to be capable of avoiding knowledge that it was not just a one to 2% risk, but a 10 to 17% risk. It's our position that that additional information would have pushed them to make the right decision of stopping the Depakote once the pregnancy scare was acknowledged, or even have not prescribed it at all, which would have been consistent with the standard of care under those set of facts with that risk being 10 to 17%. And I would submit again, that those are not factually inconsistent statements, that is really a difference in legal theories. And the and the law is very clear that a plaintiff can pursue different legal theories against multiple defendants, and that there can be more than one proximate cause that in this case, the proximate cause of the injury could have been both the inadequate warnings and the doctor's malpractice. Finally, you know, the with regard to the equities, and yes, the Mohammed's did benefit, there was a $12 million settlement, which occurred during jury deliberations. And a cap was put on because there was doubt as to whether or not the jury was going to see it plaintiff's way. And we know from the jury's verdict that $12 million was not full compensation for Quatro and his injuries. And so that the benefit, the plaintiff did not fully benefit, and it was not fully compensated, which is the reason for pursuing this lawsuit. And there would not be double recovery, because in the event there was a verdict against Abbott that exceeded 12 million, they wouldn't be allowed to set off. So I believe that when the equities are looked at in this case, that even if well, first of all, that on its own plaintiff or defendants have not proven that judicial estoppel should be applied here, under the equities, it should not be applied. And then, as Dr. Nassar's affidavit, there are questions of fact on approximate cause that require a jury to hear them. So we would again, ask that this court vacate the summary judgment and remand the case back to the circuit court. Any questions? I have a counsel of a 60 second response. Was the doctor's negligence an intervening cause here? Are you addressing it to me? I am, sir. Okay. An intervening cause. No, it was, I don't, it was not an intervening cause. It was a combination of it was a, I believe that the failure to provide adequate warning, and the doctor's mistakes and judgment in evaluating the risk benefit, they were causes that were working, that would work together in conjunction with each other to reach the result that occurred here, but the doctors would not, their conduct alone would not be an intervening cause that would insulate the drug company from from liability that it was, it would have been a combination of, of events and causes, not an intervening cause. Okay, thank you. Any other questions? No, no, no other questions. Well, thank you, Mr. Lomblad and Ms. Wittenauer. We will take this case under advisement.